UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF AMERICA

v.                                                            CASE NO. 8:20-cr-266-MMS-JSS

BERNARDO VARGA,
RICARDO POLANCA-MEDINA, and
CARLOS ALBERTO LUNA-GAMBOA

**UNITED STATES' TRIAL BRIEF**

The United States submits this memorandum of law to the Court regarding the matter of chain of custody:

**1. Background**

The defendants in this case are currently on trial charged with conspiracy to possess with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States, and possession with intent to distribute five kilograms or more of cocaine while on board a vessel subject to the jurisdiction of the United States. Doc. 1.

The United States has so far presented ten witnesses in the case,[1] and photographs and documents and video-recordings have also been admitted. Through Customs and Border Protection Flight Officer Ronnie Baskin, the United States

---

[1] The witnesses presented thus far are Ronnie Baskin, Steven Ray, Paul Maurizio, Raven Perry, Adam Bahney, John Gillian, Scott Barber, Quinten Maggio, Isaac Adames and Maria Guzman. The United States seeks to present the testimony of Senior Forensic Chemist Carlos A. Diaz.

presented evidence that on September 2, 2020, in the course of his duties, Baskin tracked a small northbound boat suspected of drug trafficking in the Caribbean Sea and that he was in communication with a Coast Guard team. The small boat was on a course that leads from Colombia to the Dominican Republic. Steven Ray, an agent with the Coast Guard Investigative Service testified regarding common means and methods of drug trafficking in the Caribbean Sea, including the make-up of crews, the types of vessels used, the items usually found on drug trafficking boats, and the common routes for such ventures, among other things.

Coast Guard Officers Raven Perry and Scott Barber testified that having been informed of a target of interest, they launched from the RFA Argus, a British vessel, in a small vessel to intercept the boat suspected of drug trafficking, and in the course of doing so, witnessed bales or packages being thrown from the boat suspected of drug trafficking. They testified that they picked up one of the bales and left a marker for another team to be able to find other bales in the water when they continued their pursuit of the small vessel, which they caught and stopped a short time later. A total of 11 bales were eventually recovered from the water in the area of the interdiction. Pictures of those bales as they appeared shortly thereafter on the RFA Argus have been admitted into evidence, and they show that eight of the 11 bales were wrapped in a black plastic-like substance, while three have no black plastic-like covering and appear white. A white interior packaging underneath the black plastic-like covering, and yellow handles or stitching protruding out from the black plastic-like covering, can be seen on some parts of several of the mostly black bales. Former Coast Guard

Officer Quinten Maggio testified that he opened up one of the bales to do conduct narcotics identification kit tests of the substance contained within the interior of the bales and that two tests were positive for cocaine. Maggio also identified a kilogram sized portion from one of the bales labeled with the letters "MALLA."

Eight of the ten witnesses presented thus far have presented evidence of the handling and chain of custody of the bales of suspected cocaine. Coast Guard Officers Raven Perry testified that while initiating the case, she received a Federal Drug Identification Number (FDIN) that is placed on forms and accompanies a seizure as it is transferred, and each person who received the seizure or transferred the seizure testified that the FDIN is checked at the time of transfer to make sure the items received match the forms accompanying them. The FDIN allows tracing all the way back to the seizure event for anyone using it.

Four of the ten witnesses the United States has presented thus far testified primarily regarding the chain of custody as the seizure of the 11 bales of suspected cocaine was transferred from Officer Raven Perry on the RFA Argus (which had no other drugs on board at the time) to John Gillian on the Coast Guard Cutter Spencer (which had no other drugs on board at the time) to Mary Sims on the Valiant to Adam Bahney on the Mohawk to Isaac Adames on the Harriet Lane and then to Drug Enforcement Administration (DEA) Special Agent Paul Maurizio, who testified that he checked the FDIN and other identifying information with the bales, and then oversaw its transport to the DEA laboratory in Florida. The only person not present in-person to testify to this transfer was Mary Sims, who was on the

witness list but was unable to travel owing to testing positive for COVID, however John Gillian testified that he transferred the seizure along with the FDIN to Mary Sims and Adam Bahney testified that he received the shipment from Mary Sims, a former classmate, along with the FDIN. In other words, evidence of the entire chain of custody has been presented, even though Mary Sims was unavailable to testify. There is no unexplained gap.

The chain of custody witnesses also gave testimony regarding the safeguarding of the evidence, including the secure locations where it was stored, the locks used, and the means by which it was moved from ship to ship. Some testified that in movement, some of the bales may get damaged, but no special reporting is required as long as no suspected cocaine is lost.

In addition to photographs of the seizure taken on the RFA Argus before the first transfer (*see* exhibits 4b-4d), the United States introduced exhibit 9, a photograph of bales on a pallet on the deck of the Harriet Lane, where the seizure was collected on September 17, 2020, by Paul Maurizio. The number of bales and size of the bales is consistent with the photographs from the RFA Argus (exhibits 4b-4d), but the black plastic-like covering of eight of the eleven bales appears to have been removed, although some of the bales on the bottom of the stack of bales in exhibit 9 cannot be seen.

There is no evidence of tampering with the evidence in this case, no evidence that even one kilogram has been misplaced or mixed in with another seizure, let alone nearly 300 kilograms, and *the interior of all the bales and their contents* appears in

the photograph in exhibit 9 to be entirely intact and undisturbed, except for the contents of the bale that was opened to do the narcotics testing and to prepare a representative sample of ten kilograms, which Quinten Maggio testified to having done.

The FDIN that witnesses checked and that accompanied the seizure on each step of its journey is prominently displayed on a label with the seizure in exhibit 9. The personal items of the defendants, and the defendants themselves, were transferred in the same fashion as the seizure of the 11 bales, and the personal items of the defendants were photographed on the RFA Argus and received on shore from the Harriet Lane in the same fashion as the 11 bales.

The defendants have objected to the United States presenting the testimony of Senior Forensic Chemist Carlos Diaz, arguing that it should not be allowed because the chain of custody has not been sufficiently established. In addition to being able to present testimony of the testing of the substances he received from DEA Special Agent Paul Maurizio, Senior Forensic Chemist Diaz would be able to present photographic evidence of a kilogram of cocaine (proposed exhibit 10b) with a label identical to the label on the kilogram in United States' exhibit 4b (taken at the beginning of the case on the Argus), and he would present evidence that a representative of the defendants visited the DEA laboratory and viewed the cocaine.

2. Argument

The proper foundation for a tangible object requires authentication through testimony of the original acquisition of the item and subsequent custody of the item,

in addition to the connection of the item to the accused and the crime charged. Gaps in a chain of custody merely go to the weight and not the admissibility of an exhibit offered into evidence, in the absence of tampering with the object. *United States v. Perez*, 625 F. Appx. 919, 922 (11th Cir. 2015) (citing *United States v. Roberson*, 897 F.2d 1092, 1096 (11th Cir. 1990) (citing *United States v. Kaiser*, 660 F.2d 724, 233 (9th Cir. 1981)); *United States v. Sarmiento-Perez*, 724 F.2d 898, 900 (11th Cir. 1984); and *United States v. Garcia*, 718 F.2d 1528, 1533-34 (11th Cir. 1983)).

In *United States v. Sarmiento-Perez*, 724 F.2d 898, 900 (11th Cir. 1984), the Court admitted cocaine evidence but not the containers in which it came, and on appeal the defendant argued that the Court could not admit the cocaine under such circumstances. The Eleventh Circuit stated in response:

> The connection of physical evidence with a defendant, however, may be shown by circumstantial evidence … The failure of the government to have the box and the two bags admitted as evidence merely puts the case in the same posture as if the box and bag had never been presented at trial. It does not prevent the admission of the cocaine provided the government presents sufficient evidence from which a reasonable inference can be drawn that the cocaine seized by the agents and introduced at trial is connected to the defendant. Proof of the connection of physical evidence with a defendant goes to the weight of the evidence rather than its admissibility. Likewise, evidence regarding a chain of custody does not affect admissibility, only the weight of the evidence.

*Id.* (citations omitted).

In a case involving a large seizure of marijuana from a vessel by the Coast Guard, the appellant argued that a sample of the marijuana taken from a boat was improperly admitted because the government failed to introduce evidence connecting it to him, but the Eleventh Circuit stated: "'It is clear that connection of physical

6

evidence with a defendant may be shown by circumstantial evidence.' (citations omitted). Further we have consistently held that 'proof of the connection goes to the weight of the physical evidence rather than its admissibility.'" *United States v. Kubiak*, 704 F.2d 1545, 1552 (11th Cir. 1982). "Appellant Parks' insistence that the government's failure to establish a chain of custody of the marijuana sample prevents the admission of such evidence is equally meritless, 'as evidence regarding a chain of custody does not reflect admissibility, only the weight of the evidence.'" *Id.*, citing *United States v. Morgan*, 559 F.2d 397, 399 (5th Cir. 1977).

In another case involving a large seizure of marijuana by the Coast Guard, the testimony at trial by one witness was that he turned the bales of marijuana from a vessel named the C-LARK over to a DEA agent whose name he could not remember on a particular day, and a DEA agent testified that he picked up the bales at the Customs docks in Miami at about the same time, and "[t]he trial court determined that there was a sufficient degree of certainty that the marijuana introduced at trial was from the C-LARK to warrant its admission into evidence." *United States v. Clark*, 664 F.2d 1174, 1176 (11th Cir. 1981). The Eleventh Circuit stated: "The minor break in the chain of possession hypothecated in this case might properly affect the weight that the trial judge accorded that evidence as the trier of fact, but should not preclude its admission into evidence." *Id.*

In the case at bar, numerous witnesses have testified to the chain of custody of the 11 bales from the seizure and the circumstances in which it was checked at each transfer point and safeguarded. Photographs show the bales as they were when

7

plucked out of the water. A later photograph shows the bales on the deck of the ship that brought them on the last leg of their voyage to Florida, and that photograph is marked with the FDIN that accompanied the bales throughout their journey. The black plastic-like covering that was on eight of the 11 bales when they were pulled out of the water is gone but there is no evidence of tampering with the bales in the photographs or otherwise. Indeed the contents of the bales, except those kilograms removed for testing or to make up the representative sample appear to be enclosed within the white sacks (with yellow stitching or handles) covering the contents of the bales which appear entirely intact and undisturbed.

## **CONCLUSION**

For the foregoing reasons, the United States respectfully requests that this Honorable Court allow the testimony of Senior Forensic Chemist Carlos A. Diaz and allow the jury, the triers of fact, to assess the weight to be given to the evidence

the United States is offering, in light of the chain of custody evidence and authentication evidence provided.

        Respectfully submitted,

        ROGER B. HANDBERG
        United States Attorney

By:   */s/ E. Jackson Boggs Jr.*
        E. Jackson Boggs Jr.
        Assistant United States Attorney
        United States Attorney No.: 080
        400 N. Tampa Street, Suite 3200
        Tampa, Florida 33602-4798
        Telephone: (813) 274-6000
        Facsimile: (813) 274-6358
        E-mail: Jackson.Boggs@usdoj.gov

U.S. v. Varga, et al.                                    Case No. 8:20-cr-266-MSS-JSS

## **CERTIFICATE OF SERVICE**

I hereby certify that on July 20, 2022, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to:

    Kathleen M. Sweeney, Esquire
    Tim Bower-Rodriguez, Esquire
    Amanda Sellers, Esquire

                                           */s/ E. Jackson Boggs Jr.*
                                           E. Jackson Boggs Jr.
                                           Assistant United States Attorney
                                           United States Attorney No.: 080
                                           400 N. Tampa Street, Suite 3200
                                           Tampa, Florida 33602-4798
                                           Telephone: (813) 274-6000
                                           Facsimile: (813) 274-6358
                                           E-mail: Jackson.Boggs@usdoj.gov